UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80732-CIV-MARRA/MATTHEWMAN

RAVI KADIYALA, individually, and as the
Assignee of CREDIT UNION MORTGAGE
UTILITY BANC, INC., an Illinois corporation,

    Plaintiff,

v.

MARK JOHN PUPKE, MARIE MOLLY
PUPKE,

    Defendants.
_____/

MARK JOHN PUPKE and
MARIE MOLLY PUPKE,

    Counterclaim Plaintiffs,

v.

RAVI KADIYALA, individually, and as the
Assignee of CREDIT UNION MORTGAGE
UTILITY BANC, INC. an Illinois corporation,

    Counterclaim Defendant.
_____/

FILED BY **SW** D.C.

Aug 15, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### ON PLAINTIFF'S RENEWED VERIFIED MOTION FOR ATTORNEY'S FEES AND
### NON-TAXABLE EXPENSES AND COSTS [DE 316]

**THIS CAUSE** is before the Court upon Plaintiff, Ravi Kadayala's, individually, and as the assignee of Credit Union Mortgage Utility Banc, Inc., an Illinois corp., ("Plaintiff") Renewed Verified Motion for Attorney's Fees and Non-Taxable Expenses and Costs ("Motion") [DE 316]. The Honorable Kenneth A. Marra, United States District Judge, referred the Motion to the

undersigned United States Magistrate Judge. *See* DE 286. Defendants Mark John Pupke and Marie Milly Pupke, proceeding *pro se*, filed a response [DE 327], and Plaintiff filed a reply [DE 328].

On May 24, 2024, the Court entered a Paperless Order requiring Plaintiff to "promptly file a supplement to his motion explicitly stating the hourly rate(s) for each of the attorneys, paralegals, and other staff who worked on this case, as well as the number of hours billed by each. The attachment of the billing records is insufficient." [DE 329]. The Court later set a deadline of June 7, 2024, which Plaintiff sought to extend. [DEs 331, 332, 333]. On June 14, 2024, Plaintiff filed his Supplement to His Renewed Verified Motion for Attorney's Fees and Non-Taxable Expenses and Costs [DE 334]. Defendant then sought leave to file an additional response, which was granted, and, subsequently, sought several extensions of time to file that response. [DEs 335, 337, 338, 341]. On July 31, 2024, Defendant Mark John Pupke, proceeding *pro se*, and Defendant Marie Molly Pupke, as "Attorney-in-Fact/Agent for Mark John Pupke," filed a Response in Opposition to Plaintiff's Renewed Verified Motion for Attorney's Fees and Non-Taxable Expenses and Costs [DE 342]. Finally, on August 7, 2024, Plaintiff filed a Reply in Support of Renewed Verified Motion for Attorney's Fees and Non-Taxable Expenses and Costs [DE 343].

Thus, the matter is now ripe for review. For the reasons that follow, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **GRANT IN PART AND DENY IN PART** Plaintiff's Motion [DE 316].

## BACKGROUND

On August 24, 2022, Judge Marra entered an Order Granting Plaintiff's Motion for Attorney's Fees [DE 286]. In that Order, he explained,

> On December 17, 2021, the Court entered Judgment for Plaintiff and against Defendant Mark Pupke ("Pupke") based on the jury's verdict in favor of Plaintiff on, among other things, a claim of fraud. (DE 213, 235.) The evidence at trial demonstrated that Plaintiff and Pupke, among other transactions, entered into a

2

>Stock Purchase Agreement. According to the Agreement, Pupke was to transfer 49% of the shares of an entity know as EURO to Plaintiff in consideration for the payment of $469,789.43. The evidence at trial also demonstrated that Pupke did not transfer the shares, although payment had been made and received by him. In the complaint, Plaintiff alleged that Pupke made numerous false representations "as he sought to sell shares in an existing business while knowing that he intended merely to pocket Plaintiff's cash and abandon the business of EURO." (DE 1, p. 16, ¶ 63). Plaintiff now seeks attorney's fees and non-taxable costs based on the Stock Purchase Agreement which provides, in relevant part: "In the event of any litigation concerning this Agreement, the prevailing party shall be entitled to recover all costs expended (including reasonable attorney's fees)." (Ex. A, DE 257.)
>
>According to Plaintiff, the fraud "arose, in part, out of statements made in the aforementioned Stock Purchase Agreement." (DE 257 at 2.) Plaintiff argues that because he is a prevailing party and the litigation concerned the Agreement, he is entitled to recover his fees and non-taxable costs. Defendants respond that Plaintiff waived all his rights to attorney's fees because the fees for the fraud claim are based in tort, not in contract, and thus do not fall within the purview of the attorney's fees provision in the Agreement.

*Id.* at 2.

Judge Marra ultimately granted in part and denied in part Plaintiff's Motion for Attorney's Fees [DE 257]. [DE 286 at 4]. He explained that, "Marie Pupke, Mark Pupke's wife, was also a defendant against whom the jury found liability on some claims. Mrs. Pupke, however, was not a party to the contract in question, so there is no legal basis upon which Plaintiff could assert a claim of attorney's fees against her." *Id.* at 2. The Court determined that Plaintiff is entitled to fees under the Agreement and referred to the Undersigned the issue of the amount of attorney's fees to award Plaintiff. *Id.* at 4–5.

The Undersigned ruled thereafter that he was staying and deferring ruling on the portion of Plaintiff's Motion for Attorney's Fees because Defendant had filed a notice of appeal. [DE 287]. The Undersigned explained that Plaintiff could re-file his motion, in accordance with our Local Rules, within 14 days after a final appellate decision or Mandate is issued by the Eleventh Circuit. *Id.* Additionally, any such motion was to comply strictly with Local Rule 7.3(c)'s requirements,

3

including a renewed good faith conferral effort to resolve the attorney's fees and non-taxable costs and expenses being sought. *Id.*

The Eleventh Circuit Court of Appeals issued its Mandate on February 1, 2024. [DE 314]. The Motion was filed on February 14, 2024. [DE 316].

**MOTION, RESPONSES, AND REPLIES**

I. **Plaintiff's Motion [DE 316]**

In the Motion, Plaintiff seeks $625,764.00 in attorneys' fees and $13,539.40 in non-taxable costs and expenses, "as well as expenses incurred after the judgment as to costs." [DE 316 at 4]. Plaintiff explains that the attached bills are only current through January 31, 2024, and do not include "the time and fees incurred in the preparation of this motion or of ongoing work." *Id.* Next, Plaintiff describes the qualifications of Glenn Seiden, Esq., Brooke Stevens, Esq., Alan J. Mandel, Esq., Mark Cisek, Esq., Tyler Geppert, Esq., Antonio Flores, Esq., Joshua A. Redman, Esq., Jack Goldberger, Esq., paralegals Jessica Edmiston and Maritza Galaviz, and office manager Joane P. Acosta. *Id.* at 4–6.

With regard to non-taxable costs, Plaintiff argues that "because the agreement between Plaintiff and Mark Pupke expressly permits recovery of '**all** costs expended' [emphasis added] (as opposed to merely attorney's fees), Plaintiff also seeks to recover the following costs he expended in the instant litigation which otherwise would not be recoverable under 28 U.S.C. §1920, or which would be recoverable but were incurred after the previously issued judgment as to costs." [DE 316 at 7]. Plaintiff then lists those costs, which are for things such as service, various filing fees, FedEx deliveries, airfare, hotels, subpoena fees, court report fees, document production fees, travel fees, witness and mileage fees, PACER fees, certificate of good standing fees, Eleventh Circuit application fees, transcripts, and printing and binding. *Id.* at 7–8.

4

## II. Defendants' Response [DE 327]

After Defendants' counsel withdrew from the case, Defendants filed a *pro se* response [DE 327]. The vast majority of the response contains arguments that have already been disposed of by the jury, Judge Marra, and/or the Eleventh Circuit. The response also makes allegations against many different individuals and seemingly alleges ineffective representation by counsel. Nowhere in the response do Defendants specifically object to the attorneys' billable rates, the specific hours billed, or the specific costs. Defendants do, however, ask for the Court's sympathy and for the Court to reduce the fees and costs to be awarded to Plaintiff to the amount of "one penny." [DE 327 at 16].

## III. Plaintiff's Reply [DE 328]

Plaintiff asserts that "the language of the operative provision of the Agreement removes any discretion that this Court may otherwise have had in awarding Plaintiff the full amount of the fee he now claims. The only limiting factor that the Agreement puts upon Plaintiff's recovery here (albeit a significant one) is that the attorney's fees Plaintiff recovers from Mark must be reasonable." [DE 328 at 3].

## IV. Plaintiff's Supplement [DE 334]

Plaintiff maintains that, between November 2015 and May 31, 2024, Plaintiff "has incurred $640,922.75 in attorney's fees and $13,539.40 in non-taxable costs and expenses, as well as expenses incurred after the judgment as to costs." [DE 334 at 2]. Plaintiff next provides a lengthy summary of the logistics of his attorneys' billing practices and certain flat rate charges that were charged separately from the hourly billing. *Id.* at 2–4. He provides a more specific listing of "attorneys and support staff, with the initials used for those entries, their billing rates (and, if those rates changed over time, when that happened), and the total hours worked by each." *Id.* at 4–5.

## V.  Defendants' Response [DE 342]

Defendants allege that "Plaintiff's legal invoices presented to this Court appear as bogus as this sham Case. Defendants should be the ones being rewarded attorneys fees plus some for having been the victims of this scheme orchestrated by Plaintiff." [DE 342 at 1]. They also assert that "Defendants have and continue to endure tremendous abuse, slander and persecution through this process for reason[s] unbeknownst to them." *Id.* Defendants again make a series of allegations against Plaintiff, the attorneys involved in this case, the underlying facts of the case in general, and the trial. *Id.* at 2–8. With regard to the legal invoices of Plaintiff's counsel, they argue that "most of the invoices are unreasonable and exaggerated if not fabricated by Plaintiff's Counsels altogether" and the "vast majority of Plaintiff's legal invoices pertain to Kadiyala's Counsels and former Co-Defendant and Defendants' CPA John P. Miller and Miller's attorneys strategizing and/or manipulating Defendants Mark and Marie's financial data for Kadiyala." *Id.* at 9. Defendants request that the Court compel Plaintiff to support several documents before ruling on the Motion. *Id.* They claim that the documents are necessary for the Court to "reasonably verify the validity of these legal invoices." *Id.* at 10. Defendants further break down the total motions filed by Plaintiff in each year that that case has been pending alongside the alleged legal fees from that year. *Id.* at 10–21.

## VI.  Plaintiff's Reply [DE 343]

Plaintiff argues that "the bulk of [Defendant Mark Pupke's] Response does not consist of targeted critiques of specific entries in Plaintiff's attorney's bills, but instead, presents poorly-sourced, scurrilous accusations of wrong-doing by Kadiyala, the Pupkes' own prior counsel (both the trial and Appellate counsel), and others." [DE 343 at 2–3]. Plaintiff further contends that "none of this argument, such as it is, is relevant to the propriety or reasonableness of his attorney's fees

6

and costs, and accordingly, should be disregarded by this Court." *Id.* at 3. As to Defendants' request for production of documents, Plaintiff asserts that it is "grossly belated" and also that the documents requested are either already available to Defendants or are privileged in nature and/or irrelevant. *Id.* at 3–5. Lastly, Plaintiff maintains that Defendants other objections to the attorney's fees requested are without merit. *Id.* at 6–7.

## DISCUSSION

As an initial matter, Plaintiff is correct that the only issue that this Court has before it with regard to the attorneys' fee award is whether the fees were reasonable. Judge Marra has already determined entitlement. Thus, the majority of Defendants' responses are wholly irrelevant to the pending Motion.

Next, Judge Marra only found entitlement as to Defendant Mark John Pupke. The Court is confused as to why Defendant Marie Molly Pupke continues to actively litigate issues that do not directly concern her. No award of attorney's fees or costs will be issued against Defendant Marie Molly Pupke, and, thus, her arguments are irrelevant to the pending Motion.

Finally, to the extent Defendants are seeking documents regarding this attorneys' fee issue, that request is DENIED. This is because such a request cannot be made by way of a response (but rather requires an independent motion); the request is extremely untimely in light of the fact that the original Motion was filed on February 14, 2024; many of the documents sought have already been filed on the docket; many of the documents sought seek attorney-client privileged information; many of the documents sought are irrelevant to the discrete issues currently before the Court; and Defendants have made nothing more than self-serving accusations that the billing records are invalid.

I. **Reasonable Attorneys' Fees Amount**

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1350 n.2 (citation omitted). However, the Court may also use its own experience in assessing the reasonableness of attorneys' fees. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman*, 836 F.2d at 1299)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427. With regard to the type of evidence that the fee claimant should produce in support of a claim, in *Barnes*, the Eleventh Circuit has stated that

> [t]he "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id*. (citations omitted).

168 F.3d at 427.

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See id.* (quoting *Norman*, 836 F.2d at 1301). The burden rests on the movant to submit a comprehensive request for fees so the court can determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782. "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So, trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

In this case, Defendant Mark John Pupke has failed to specifically object to the reasonableness of the attorneys' fees sought other than to allege, without any support whatsoever, that the invoices are fraudulent. Thus, they have waived any specific objections to the time incurred, or the hourly rates of counsel. However, the Court will still fulfill its independent duty

to only award fees and costs which are reasonable, lawful and justified under federal law. Plaintiff is seeking a total attorneys' fees award of $640,922.75.[1] [DE 334 at 2].

(a) <u>Hourly Rates</u>

According to the Supplement, the attorneys, paralegals and other staff representing Plaintiff billed at the following rates:

|  | Hourly Rate | Hours Billed |
|---|---|---|
| Glenn Seiden, Esq. | $550-650[2] | 69.3 (plus $22,500.00 in flat fees) |
| Brooke Stevens, Esq. | $375 | 534.2 |
| Alan J. Mandel, Esq. | $475 | 36.5 (plus $5,000 in flat fees) |
| Mark Cisek, Esq. | $275-350[3] | 1,040.05 (plus $22,500.00 in flat fees) |
| Tyler Geppert, Esq. | $275 | 35.2 |
| Antonio Flores, Esq. | $275 | 0.75 |
| Joshua A. Redman, Esq. | $275 | 2.1 |
| Jack Goldberger, Esq. | N/A | N/A ($2,500.00 in flat fees) |
| Paralegal Jessica Edmiston | $135 | 6.5 |
| Paralegal Maritza Galaviz | $135 | 16.2 |
| Office Manager Joane P. Acosta | $155 | 12.65 |

---

[1] This is an increase of $15,158.75 from the fees sought in the original Motion.
[2] Mr. Seiden's hourly rate changed over the years.
[3] Mr. Cisek's hourly rate changed over the years.

10

| Legal Assistant Brenda Rossini | $150 | 25.5 |

The attorneys', legal assistants' and paralegals qualifications are listed in the Motion. [DE 316 at 5-6].

Having considered the information contained in the various filings, and the *Johnson* factors, and based upon the Undersigned's own knowledge and experience, the Undersigned concludes that the hourly rates of Ms. Rossini, Ms. Acosta, Ms. Galaviz, Ms. Edmiston, Mr. Redman, Mr. Flores, Mr. Geppert, Mr. Cisek, and Ms. Stevens are reasonable and appropriate. However, the Court finds that billable rates of Mr. Mandel and Mr. Seiden to be unreasonably high. *See Centennial Bank v. M/V "Why Not"*, No. 22-CV-22883, 2024 WL 3072041, at *5 (S.D. Fla. Mar. 6, 2024), *report and recommendation adopted sub nom. Centennial Bank v. M/V Why Not*, No. 22-22883-CIV, 2024 WL 3070755 (S.D. Fla. June 20, 2024) (reducing the billable rate of an attorney with over 30 years of experience from $525 and $625 to $450 and the billable rate of an attorney with 16 years of experience from $580 and $600 to $374); *Desantis v. Atwood*, No. 20-CV-62004, 2022 WL 787973, at *4 (S.D. Fla. Mar. 2, 2022), *report and recommendation adopted sub nom. DeSantis v. Blackened Dolphin*, No. 20-62004-CIV, 2022 WL 783194 (S.D. Fla. Mar. 15, 2022) (reducing the billable rate of an attorney with 40 years of experience from $475 to $375). In light of the Court's own personal knowledge of the Florida legal market, the Undersigned will award Mr. Mandel a rate of $400 per hour and Mr. Seiden a rate of $450 per hour (for all years that he billed in this case).[4]

---

[4] The Court further notes that, to the extent these out-of-state attorneys are seeking to recover non-local rates, they "must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999); *see also Graves v. Plaza Med. Ctrs., Corp.*, No. 1:10-23382-CV, 2018 WL 3699325, at *6 (S.D. Fla. May 23, 2018), *report and recommendation adopted*, No. 10-

11

(b) <u>Reasonableness of Hours Billed</u>

Additionally, having reviewed the invoices attached to the Motion and the Supplement, the Undersigned concludes that the hours billed are not wholly reasonable.

First, the Court finds that some of the time billed was excessive.[5] It also appears that the attorneys, legal assistants, and paralegals in this case performed a great deal of duplicative work.[6] The Eleventh Circuit recognizes that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302 (citing *Johnson v. Univ. Coll. Of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)). To recover time for multiple attorneys, the fee applicant bears the burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Barnes*, 168 F.3d 423; *see also Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013) ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings."). "Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed." *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-CIV, 2019 WL 4694147, at *4 (S.D. Fla. Aug. 27, 2019) (citing *Norman*, 836 F.2d at 1301). Here, Plaintiff has not shown that the tasks performed by the

---

23382-CIV, 2018 WL 3697475 (S.D. Fla. July 13, 2018). The attorneys in this case have failed to meet this burden.

[5] For example, Plaintiff's counsel spent excessive time preparing the initial subpoenas while also preparing waiver of summons requests and then having the various defendants served in April through August of 2016. Similarly, counsel spent many hours just discussing the possibility of settlement internally and with opposing counsel after the case was transferred to the Southern District of Florida.

[6] For example, Joane P. Acosta consistently billed for intra-office discussions and conferences and for the receipt and review of filings and communications. However, attorneys would then bill for the same receipt and review. The same is true of the hours billed by Maritza Galaviz and others. Additionally, throughout the billing records, multiple attorneys worked on the same filings.

different attorneys, legal assistants, and paralegals always reflect distinctive contributions to the case.

Additionally and relatedly, the Court must take into account the flat fees recovered by Plaintiff's counsel in this case. This consists of $22,500.00 paid to Mr. Seiden; $5,000.00 paid to Mr. Mandel; $22,500.00 paid to Mr. Cisek; and $2,500.00 paid to Mr. Goldberger. It should be noted that Plaintiff paid a $45,000.00 trial fee for appearance at the 7-day trial, and that the flat fees are on top of the hours billed for extensive trial preparation and the hours billed by a third attorney during the trial period.[7]

Second, there is a plethora of block billing throughout the invoices. For example, on April 3, 2019, Mr. Cisek billed 4.10 hours as follows: "Continued preparing Plaintiff's Responses to the Pupke Defendants' Request to Admit. Conferred with the client by telephone regarding discussing Plaintiff's various discovery responses. Conferred with TG and BLS regarding the same." [DE 334-1 at 89 of 177]. On the same date, Ms. Stevens billed as follows: "Attend teleconference with client, MC, and TG regarding discovery; strategize with MC and TG regarding responses to discovery, propounding discovery and motion practice; email exchange with opposing counsel regarding hearing on motion to compel, deposition, and meet and confer; strategize with MC regarding deposition and hearing date." *Id.* at 90 of 277. Block billing is impermissible because it prevents the Court from determining which portion of the fees billed on a particular date is recoverable and which is not. *See D'Agostino v. Keitel*, No. 18-CV-80460, 2019 WL 5209638, at *6 (S.D. Fla. Sept. 27, 2019); *Anish v. Nat'l Sec. Corp.*, No. 10-80330-CIV, 2014 WL 5034720, at

---

[7] According to Plaintiff, there was a "$45,000.00 trial fee for the appearance at trial, distributed as $22,500.00 under Glenn Seiden and $22,500.00 under Mark Cisek, as the trial attorneys in this case. Kadiyala was not charged an hourly rate on those trial days for the attorneys who traveled to and were present at the trial." [DE 334 at 3]. Additionally, "Local counsel, Jack Goldberger, had a flat rate of $2,500.00. This flat rate was billed as an expense on the billing." *Id.* Moreover, "[o]utside counsel Alan Mandel (whose firm billed through SLG), charged a flat rate fee of $5,000.00, plus hourly, for his work." *Id.*

13

*3 (S.D. Fla. July 3, 2014).

Third, counsel and/or their assistants billed for tasks such as filing various documents with the Court. Entries for clerical or administrative tasks should be excluded. *See Thompson v. Branch Banking & Tr. Co.*, No. 19-CV-60108, 2020 WL 7061558, at *3 (S.D. Fla. Nov. 10, 2020), *report and recommendation adopted,* No. 19-CV-60108-RAR, 2020 WL 7059353 (S.D. Fla. Dec. 2, 2020), *appeal dismissed,* No. 21-10010-J, 2021 WL 1327212 (11th Cir. Feb. 5, 2021); *Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999))).

(c) Calculation of Lodestar Amount

The Court has carefully considered the deficiencies in Plaintiff's counsel's billing records, which include duplication of tasks, excessive billing, and billing for clerical tasks, and finds it appropriate to reduce the time billed. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783); *Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2017 WL 4785458, at *1 (S.D. Fla. Oct. 20, 2017). Here, the Undersigned finds that an across-the-board reduction in hours is appropriate to account for the excessive hours billed, block billing, and other billing deficiencies. The Court will reduce the hours claimed by 25%.

Thus, the fee award is $23,388.75 for Mr. Seiden (reflecting 69.3 hours at an hourly rate of $450.00, reduced by 25%); $150,243.74 for Ms. Stevens (reflecting 534.2 hours at an hourly

14

rate of $375.00, reduced by 25%); $10,950.00 for Mr. Mandel (reflecting 36.5 hours at an hourly rate of $400.00, reduced by 25%); $233,055.94 for Mr. Cisek (reflecting 710.35 hours at an hourly rate of $275.00 plus 329.7 hours at an hourly rate of $350.00, reduced by 25%); $7,260.00 for Mr. Geppert (reflecting 35.2 hours at an hourly rate of $275.00, reduced by 25%); $154.69 for Mr. Flores (reflecting 0.75 hours at an hourly rate of $275.00, reduced by 25%); $433.13 for Mr. Redman (reflecting 2.1 hours at an hourly rate of $275.00, reduced by 25%); $658.13 for Ms. Edmiston (reflecting 6.5 hours at an hourly rate of $135.00, reduced by 25%); $1,640.25 for Ms. Galaviz (reflecting 16.2 hours at an hourly rate of $135.00, reduced by 25%); $1,470.57 for Ms. Acosta (reflecting 12.65 hours at an hourly rate of $155.00), reduced by 25% ; and $2,868.75 for Ms. Rossini (reflecting 25.5 hours at an hourly rate of $150.00, reduced by 25%). This results in a fee award of $432,123.95. The fee award of $432,123.95 plus the $52,500.00 in flat fees results in a total fee award of $484,623.95.

Therefore, the Undersigned **RECOMMENDS** that Plaintiff be awarded a total of $484,623.95 in attorneys' fees.

## II.  Non-Taxable Costs

The Stock Purchase Agreement at issue in this case states in section 7(b) that "[i]n the event of any litigation concerning this Agreement, the prevailing party shall be entitled to recover all costs expended (including reasonable attorney's fees)." [DE 316-1 at 4]. Plaintiff is now claiming $13,539.40 in non-taxable costs combined with taxable costs that were incurred after the Undersigned Magistrate Judge entered a Report and Recommendation on Plaintiff's Bill of Costs and Memorandum in Support of His Bill of Costs [DE 283] and after that Report and Recommendation was adopted [DE 288].

Here, the Stock Purchase Agreement contains sufficiently broad language, "all costs expended," to cover the award of both taxable and nontaxable costs related to litigation arising out of the contract. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1165 (11th Cir. 2017) (permitting non-taxable costs when a contract between the parties entitled the winning party to recover "its attorney's fees and costs"). And, under Florida law, "[p]rovisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced." *Lashkajani v. Lashkajani*, 911 So.2d 1154, 1158 (Fla. 2005); *see also Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004). Further, "[t]rial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith." *Id.*

The costs Plaintiff seeks to recover are listed in the Motion. [DE 316 at 7]. They include fees incurred for private investigation; various filing fees; FedEx expenses; airfare and hotel for attorneys; subpoena fees and milage; court reporter fees; other travel fees; fees for subpoena research; third party fees for subpoena production, document production fees; witness and mileage fees; PACER research fees; fees for Certificates of Good standing and Eleventh Circuit applications; fees for transcripts and exhibits for a court hearings; and printing and binding fees. Some of the costs sought are actually taxable and thus are clearly proper. Further, reimbursement for the type of non-taxable costs sought is permitted under the applicable case law. Additionally, Defendant Mark Pupke has waived any argument as to the reasonableness of the nontaxable costs by failing to specifically object to them in his many filings.

Thus, the Undersigned **RECOMMENDS** that Plaintiff be awarded a total of $13,539.40 in non-taxable costs.

**CONCLUSION**

In light of the foregoing, the Undersigned **RECOMMENDS** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** Plaintiff's Motion [DE 316]. Specifically, the Undersigned **RECOMMENDS** that the District Judge award Plaintiff attorneys' fees in the amount of $484,623.95 and non-taxable costs in the amount of $13,539.40, for a total award of $498,163.35, and enter a judgment against Defendant Mark John Pupke for such amount, applying the appropriate statutory interest.

**NOTICE OF RIGHT TO OBJECT**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Kenneth A. Marra. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach County, Florida, this 15th day of August, 2024.

WILLIAM MATTHEWMAN
United States Magistrate Judge