UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-80732-GAYLES/MATTHEWMAN

RAVI KADIYALA, individually, and as the
Assignee of CREDIT UNION MORTGAGE
UTILITY BANC, INC., an Illinois corporation,

    Plaintiff,
v.

MARK JOHN PUPKE and MARIE MOLLY
PUPKE,

    Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO VACATE PLAINTIFFS' JUDGMENT UNDER RULE 60(b)(6) [DE 356]

**THIS CAUSE** is before the Court upon Defendants Mark John Pupke and Marie Molly Pupke's ("Defendants") Motion to Vacate Plaintiffs' Judgment under Rule 60(b)(6) ("Motion") [DE 356]. This matter was referred to the Undersigned Chief U.S. Magistrate Judge by U.S. District Judge Darrin P. Gayles. *See* DE 353. The Motion is fully briefed and is ripe for review. *See* DEs 360, 364, 367, 371, 372. No hearing is necessary.

### I.    BACKGROUND

This case has a long and tortured history. The Complaint was originally filed on March 23, 2016, nearly 9 years ago. [DE 1]. After a great deal of pretrial skirmishing and motion practice between the parties, the jury trial in this case began on November 8, 2021, before U.S. District Judge Kenneth A. Marra.[1] [DE 205]. On November 18, 2021, the jury found for Plaintiff Ravi Kadiyala ("Plaintiff") on his claim for fraud against Defendant Mark Pupke and awarded

---

[1] This closed case was reassigned to The Honorable Darrin P. Gayles on September 9, 2025 [DE 352] upon the well-earned retirement of the Honorable Kenneth A. Marra.

$500,000.00 in compensatory damages and $1 million in punitive damages. [DE 213]. The jury also found for Plaintiff on his claim for conspiracy to commit fraud against Defendant Marie Pupke and awarded $250,000.00 in compensatory damages and $250,000.00 in punitive damages. *Id.* Lastly, the jury found for Plaintiff on his aiding and abetting fraud claim against Defendant Marie Pupke and awarded $250,000.00 in compensatory damages and $250,000.00 in punitive damages. *Id.* Thereafter, on December 17, 2021, Judge Marra entered Final Judgment. [DE 235].

Defendants appealed the decision, and Plaintiff cross-appealed. On January 3, 2024, the United States Court of Appeals for the Eleventh Circuit issued its Opinion affirming the District Court's Judgment as to Defendants' appeal, and vacating and remanding, with instructions, with respect to Plaintiff's cross-appeal. *Kadiyala v. Pupke*, No. 22-10211, 2024 WL 33910, at *2 (11th Cir. Jan. 3, 2024). On February 21, 2024, Judge Marra entered an Amended Judgment [DE 318] in compliance with the Eleventh Circuit opinion. Defendants did not further appeal.

A Judgment on the attorney's fees award was entered by Judge Marra on August 30, 2024. After that date, nothing was filed in the case until September 8, 2025, when an attorney appeared on behalf of Defendants, and Defendants also filed a Motion to Vacate Plaintiffs' Judgment Under Rule 60(b)(6). [DEs 349, 350]. That motion to vacate was later stricken by Defendants, as was the notice of appearance. [DE 354].

The pending Motion was conventionally filed on September 10, 2025, by new counsel—Jamie Todd Foreman, Esq.—on behalf of Defendants. [DE 357]. Mr. Foreman filed a Notice of Appearance [DE 355] on the same date. In addition to the Motion, Response, and Reply, Defendants have repeatedly attempted to supplement the evidence supporting the Motion. [DEs 365, 367, 372, 373, 376, 379, 380].

2

## II.   MOTION, RESPONSE, AND REPLY

### A.   Defendants' Motion [DE 356]

Defendants move under "Federal Rule of Civil Procedure 60(b)(6) and this Court's inherent authority to sanction egregious conduct arising to a fraud upon this Court" to vacate the judgment. [DE 356 at 1]. Defendants also rely on Rule 60(d)(3) as a basis for relief. *Id.* at 14. They assert that the "shareholder agreement admitted into evidence by Plaintiffs [DE 229-1]…contains Mark Pupke's signature precisely the same, appearing four times, and matching his signature on the Stock Purchase Agreement dated November 7, 2012," and that Plaintiffs "admitted fabricated phone records and testified perjuriously at trial to identify Maria Pupke falsely as the broker who they claimed fraudulently induced them into purchasing Defendant's mortgage banking business, Euro International Mortgage ('Euro')." *Id.* at 2. As relief, Defendants broadly request that the Court "vacate the judgment, dismiss Plaintiff's action with prejudice, award Defendants' attorney fees in pursuing relief under Rule 60(b), and order any just and proper remedies or sanctions that are within the Court's inherent discretionary authority." *Id.* at 22.

### B.   Plaintiff's Response [DE 360]

Plaintiff responds that Defendants should have brought their Motion under Federal Rule of Civil Procedure 60(b)(2) or (b)(3), but also that they are barred from bringing their Motion under those subsections because it would be untimely. [DE 360 at 3–6]. Next, Plaintiff contends that Defendants have not shown clear and convincing evidence of actual fraud; according to Plaintiff, Defendants rehash old arguments. *Id.* at 6–8.

### C.   Defendants' Reply [DE 364]

In reply, Defendants claim that they have "clearly and convincingly shown, through Plaintiffs' record testimony and evidence, that Plaintiffs 1) produced a signed shareholder

agreement containing exact replicas of Defendant Pupke's signature, which matched his signature on the stock purchase agreement signed on November 7, 2012, and 2) stated specifically that CUMU's[2] attorney, [Al-Haroon] Husain, managed the document signing in his office that day." [DE 364 at 3]. They argue that, in light of the evidence and Plaintiff's testimony,

> it stands to reason that the attorney who hosted the document signing, who magically "reconciled versions," and who has faced sanctions in state and federal court for admitting forgeries and fabricated evidence—issues addressed in Defendants' motion—is responsible for the forged document. Facially, Hus[ ]ain's role with the document signing, which Plaintiffs claim was signed on November 7, 2022, in Hus[ ]ain's office, implicates an attorney's role in fabricating evidence, which constitutes the egregious conduct and extraordinary circumstances required for Rule 60(b)(6) relief as a fraud upon the court. *Rozier*, 573 F.2d at 1338 (5th Cir. 1978).

*Id.* at 3–4.

### III. DEFENDANTS' EXPERT WITNESS REPORT

In addition to the exhibits attached to their Motion, Defendants have filed the Expert Witness Report of Dianne Peterson. [DE 367]. Ms. Peterson, a "Forensic Document Examiner," opines that the Shareholder's Agreement has been "altered, because the signature of Mark Pupke is a duplicated signature that was taken from the 'Stock Purchase Agreement.'" *Id.* at 4. Ms. Peterson also opines that the "Mark Pupke signature does not have any variation when compared to the comparison signature from the Stock Purchase Agreement; they are identical." *Id.* Her basis for the opinion is that "[n]o two writings by the same or different people are identical." *Id.* Ms. Peterson, after explaining her methodology and the results of her examination, concludes that "[t]he findings strongly support the hypothesis that Mark J. Pupke's questioned signatures [ ] and comparison signature [ ] are from the same source rather than different sources" and that "it is plausible to reason that the [ ] signature image, created in 2012, was used to produce the other

---

[2] "CUMU" is an acronym for Credit Union Mortgage Utility Banc.

duplicated signatures [ ].” *Id.* at 17. Thus, she concludes that the Stock Purchase Agreement "has been altered." *Id.* at 18. She recommends that the original wet-ink Stock Purchase Agreement be examined. *Id.*

Plaintiff filed a response to the expert witness report, asserting that it "objectively offers nothing of value to this Court to help it to decide Defendants' Motion to Vacate." [DE 371 at 2]. He claims that "the absolute best argument that Defendants' Expert Witness Report would be able to support is that some unidentified person forged Mark Pupke's signature on the Shareholder's Agreement. This finding is insufficient to establish the 'egregious misconduct' that Defendants would need to show to justify vacating the judgment in this case under R. Civ. P. 60(d)(3)." *Id.* at 3. Plaintiff also maintains that the "Expert Witness Report does not, and indeed cannot, establish that an attorney was the person who forged Mark Pupke's signature. In fact, the Report does not, and indeed cannot, establish that Plaintiff or anyone connected to Plaintiff was the person who forged Mark Pupke's signature." *Id.* at 3–4. He argues that, at best, the report "would have only established the occurrence of 'ordinary' fraud, like that contemplated by Fed. R. Civ. P. 60(b)(3), and not the 'egregious misconduct' needed to receive relief under Fed. R. Civ. P. 60(d)(3)." *Id.* at 4. Finally, Plaintiff maintains that the report is untimely. *Id.* at 4–6.

In reply, Defendants acknowledge that, before the case went to trial, Defendants alleged that the shareholder agreement had been forged. [DE 372 at 3]. They argue, however, that "no officer of the court—neither Defendant's counsel nor Plaintiffs' counsel—brought to the court's attention that the shareholder agreement contained Mark Pupke's signature, appearing four times, precisely the same, and matching his signature on the stock purchase agreement signed in advance of the January 1, 2013, closing." *Id.* Then the signed shareholder agreement was admitted into evidence. *Id.* Defendants further assert that, "if the court has the authority to determine the

authenticity of Mark Pupke's signature on the shareholder agreement," then "it must hold the attorneys who litigated this matter responsible for knowingly admitting altered evidence to secure a favorable judgment, thereby implicating an attorney's role in submitting fabricated evidence, which constitutes a fraud upon the court." *Id.* at 4.

### IV.     APPLICABLE LAW

Rule 60(b)(6) permits a Court to relieve a party from a final judgment or order for "any other reason that justifies relief." Fed. R. Civ. 60(b)(6). "Rule 60(b)(6) permits a court to relieve a party from a final judgment or order for any reason that justifies relief that is not otherwise specified in Rule 60(b)(1) through (5)." *Lustig v. Stone*, No. 15-20150-CIV, 2019 WL 11660556, at *6 (S.D. Fla. Apr. 29, 2019), *aff'd,* 813 F. App'x 461 (11th Cir. 2020) (citing *Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986)). A motion under Rule 60(b)(6) "must be made within a reasonable time[.]" Fed. R. Civ. P. 60(c)(1). "A determination of what constitutes a reasonable time depends on the facts in an individual case, and in making the determination, courts should consider whether the movant had a good reason for the delay in filing and whether the non-movant would be prejudiced by the delay." *Ramsey v. Walker*, 304 F. App'x 827, 828 (11th Cir. 2008). "Relief under Rule 60(b)(6) is only available in 'extraordinary circumstances.'" *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, 80 F.4th 1236, 1244 (11th Cir. 2023) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)); *see also BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). "Even then, whether to grant the requested relief is a matter for the district court's sound discretion." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000) (alteration adopted) (citation and internal quotation marks omitted).

"This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988)).

Federal Rule of Civil Procedure 60(d) states that Rule 60 does not limit a court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "Where relief from a judgment is sought due to fraud on the court, the fraud must be established by clear and convincing evidence." *Gupta v. Walt Disney World Co.*, 482 F. App'x 458, 459 (11th Cir. 2012) (citing *Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987)). "[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Id.* (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). "Stated differently, the movant must show an 'unconscionable plan or scheme' to improperly influence the court's decision." *Id.* (quoting *Rozier*, 573 F.2d at 1338). "Fraud between parties does not constitute fraud on the court, as it does not carry the same threat of public injury." *Id.* (citing *S.E.C. v. ESM Grp., Inc.*, 835 F.2d 270, 273 (11th Cir. 1988)).

### V. ANALYSIS

1. The Motion is Untimely

Plaintiff first argues that Defendants' Motion should have been brought under Rule 60(b)(2) or (3), which subsections require that a motion be brought "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Rule 60(b)(2) pertains to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)", and Rule 60(b)(3) pertains to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an

opposing party." Fed. R. Civ. P. 60(b)(2)–(3). Defendants are alleging fraud, misrepresentation, or misconduct by an opposing party. Thus, they should have moved under Rule 60(b)(3) and not Rule 60(b)(6). If they had moved under the correct subsection, the Motion would have been untimely as it was filed more than a year after the entry of the Amended Judgment on February 21, 2024. Even if the deadline started tolling on the date the Judgment on attorney's fees was filed, the Motion would still have been outside of the one-year period. Therefore, Defendants are improperly attempting to circumvent the untimeliness of their Motion under Rules 60(b)(2) and (b)(3) by resorting to Rule 60(b)(6). But as discussed below, that effort is doomed.

Even if the Motion was properly brought under Rule 60(b)(6), the Court must first determine whether it was brought "within a reasonable time." Fed. R. Civ. 60(c)(1). It was not. Defendants claim that they sought legal counsel a week after the appellate court issued its mandate and that they contacted 21 attorneys between February 2024 and June 2025. [DE 356 at 18]. They claim that they were not able to retain the counsel who filed their Motion until June 29, 2025. *Id.* This struggle to retain counsel is unsupported and does not substantiate Defendants' position that the Motion was filed within a reasonable time. As stated above, the Amended Judgment was filed on February 21, 2024. Defendants filed their Motion more than a year and a half later. Even more importantly, the Motion is generally premised on facts and arguments that were already presented to this Court during the pendency of the case; it was not filed within a reasonable time in this context. Thus, the pending Motion under Rule 60(b)(6) was not filed within a reasonable time. Even though the Motion is untimely filed and due to be denied on that basis alone, the Court will nonetheless proceed to analyze the substance of the Motion to ensure a complete record.

8

2. The Motion Fails on the Merits

Upon careful review of all of the papers, the evidence, the docket in this case, the arguments of counsel, and the applicable law, the Court finds that Defendants have neither established extraordinary circumstances per Federal Rule of Civil Procedure 60(b)(6) nor fraud on the Court by clear and convincing evidence per Federal Rule of Civil Procedure 60(d)(3). The Court emphasizes that the Motion is rambling in nature and does not present persuasive arguments clearly supported by specific, clearly articulated and detailed facts. Additionally, as explained further below, Defendants raise issues that were, at some level, already raised in this case.

It appears that the primary evidence upon which Defendants is relying to support the relief sought in the Motion is as follows: (1) "Plaintiffs admitted a forged shareholder agreement into the record as proof of executing the sale of Euro at a closing that they did not attend"; (2) Plaintiffs "produced patently manipulated mobile phone bills to support their perjured testimony at trial to convince the jury that Mary Pupke was the mysterious broker Nicole Ellerstein who induced them into purchase Euro that they never intended to purchase"; and (3) Plaintiffs "intentionally and consistently misled Defendants and the Court about key material facts, such as misspelling CUMU's only specifically identified investor who had a case pending in Illinois while this case was before the Court, seeking the return of a $400,000 CUMU investment warehoused in Husain's trust account." [DE 356 at 16]. These are all issues that Defendants should have and could have effectively dealt with during trial.

As to their argument that Plaintiffs admitted a forged shareholder agreement into the record at trial, first, Defendants have not established by clear and convincing evidence that the agreement was forged by Plaintiff's former counsel. Even if the Court accepted the opinion contained within Defendants' untimely filed expert report on its face, the expert did not opine as to who created the

9

allegedly forged document, and Defendants have only provided circumstantial evidence that it was Plaintiff's former counsel. Second, even if Defendants had proven that the agreement was fraudulent by clear and convincing evidence, this would constitute fraud on Defendants and not fraud on the Court. Third, the issue of the forged document was, in fact, presented to the Court before trial, as admitted by Defendants in their papers. In order to avoid this fact, Defendants argue that no counsel for any party "brought to the court's attention that the shareholder agreement contained Mark Pupke's signature, appearing four times, precisely the same, and matching his signature on the stock purchase agreement signed in advance of the January 1, 2013, closing." [DE 372 at 3]. However, the more general issue of the forged agreement was raised before and at trial, and nothing prevented Defendants' counsel from raising a more specific argument at trial. Defendants chose how to present their defenses at trial, and their failure to present certain evidence or testimony at the time of trial falls on Defendants' shoulders. Finally, the Court rejects Defendants' argument that "Plaintiffs took great lengths to shield their actions from relevance, like in their motion in limine, which suggested Husain was an irrelevant, tangential CUMU participant and attempted to whitewash his history of fabricating evidence." [DE 356 at 17]. Plaintiffs simply advocated for their position in a motion *in limine*, and Defendants had the opportunity to respond to those arguments.[3] In sum, Defendants simply have not shown that extraordinary circumstances or clear and convincing evidence of fraud on the Court exist here.

---

[3] Before the trial in this case, Plaintiff filed a Motion in Limine to Bar Testimony or Argument Regarding Plaintiff's Previous Counsel's Unrelated Legal Issues [DE 193]. Specifically, Plaintiff argued that "Defendants and their counsel should be barred from offering any testimony or argument related to [Al-Haroon B.] Husain's unrelated sanctions, suspension, and disbarment from bankruptcy court practice." *Id.* at 2. In response, Defendants noted that "there have been issues connected to forged documents that Defendant[ ], as a matter of justice, should be able to present." [DE 197 at 2]. Defendants explained that "Mr. Husain had opportunity and motive to conduct actions regarding the falsification of documents and was quite liberal with his Notary stamp as well. In fact, Mr. Husain may have forged documents independent of Plaintiff." *Id.* at 3. Clearly, these issues were known to Defendants at the time of trial and should have been raised at that time.

As to Defendants' argument that Plaintiffs produced fraudulent mobile phone bills to support their perjured testimony at trial to convince the jury that Marie Pupke was the broker Nicole Ellerstein, this issue was already presented at trial. More specifically, Marie Pupke testified in front of the jury that she believed that Plaintiff had created a document and put her phone number on it because "they have a pattern of forgery and fraud." [DE 263 at 20: 2–7]. When asked whether Mrs. Pupke was saying that Plaintiff "went back to Sprint and phonied up the phone with their number on it," she testified that the document was, indeed, created after the fact. *Id.* at 148: 24–149: 3. Additionally, Mark John Pupke testified that he believed that an individual named Ahmed Fazil was Nicole Ellerstein and that his wife, Mrs. Pupke, was not Nicole Ellerstein. [DE 264 at 163: 15–164: 6]. He also explicitly testified that Nicole Ellerstein was not Mrs. Pupke. *Id.* at 166: 4–5. Thus, there was trial testimony about the allegedly fraudulent mobile phone bills and about Mrs. Pupke not being Nicole Ellerstein. The Court also notes that, in Defendants' Motion, they even admit they "watched a line of questioning unfolding that was in stark contrast to the record evidence, which they claim was fabricated." [DE 356 at 8]. Thus, Defendants should have dealt with this issue years ago during the crucible of trial. At this late date, Defendants again cannot establish extraordinary circumstances or fraud on the Court by raising issues that existed at the time of trial.

Finally, as to Defendants' argument that Plaintiff intentionally misled them and the Court about key material facts, Defendants admit that Plaintiff's motion *in limine* [DE 193] pertained to Mr. Husain's unrelated legal issues. Thus, Defendants had notice of Mr. Husain's alleged history of fabricating evidence prior to trial. Defendants also contend that "the case involving Husain's fabricated expert witness testimony in *Stoyanov v. Himont Law Group, Ltd.*, 2024 IL App (1st) 221434- U, which required Husain to return Stoyanov's $400,000 CUMU investment made

11

immediately before CUMU's first failed contract to purchase Euro, was ongoing at the time. Yet, Plaintiffs' attorneys did not correct Fazil's misspelling or mispronunciation of Stoyanov, ensuring that the case remained concealed from Defendants and directly impairing their ability to defend themselves." [DE 372 at 5]. Misspelling a name constitutes neither extraordinary circumstances nor clear and convincing evidence of fraud on the Court; if anything, it may be circumstantial evidence of fraud on Defendants (and not the Court). Most importantly, no evidence has been presented that the name was intentionally misspelled. Once again, Defendants have not established extraordinary circumstances or clear and convincing evidence of fraud on the Court. This argument is completely frivolous.

The Court has also considered the other, less significant allegations made against Plaintiff in Defendants' papers. Even considering all of Defendants' allegations and evidence collectively, Defendants clearly have not met the strict requirements of Rules 60(b)(6) or 60(d)(3). Therefore, their Motion is due to be denied.

## VI. CONCLUSION

Defendants have been litigating this case for nearly 9 years. They proceeded to a jury trial in 2021 and lost at trial [DE 213] and later on appeal [DE 314]. They now cavalierly seek broad and unwarranted relief from this Court, requesting that it vacate the judgment, dismiss Plaintiff's claims with prejudice, and award Defendants their attorneys' fees. Defendants opted to file their Motion under Federal Rules of Civil Procedure 60(b)(6) and 60(d)(3) but, on these facts, Defendants are not entitled to any relief whatsoever. Not only is the Motion untimely, but Defendants are also unable to meet the high burdens imposed by each of those rules. Simply stated, the pending Motion is too little, too late and due to be denied.

In light of the foregoing, the undersigned Chief United States Magistrate Judge **RECOMMENDS** that Defendants' Motion to Vacate Plaintiffs' Judgment under Rule 60(b)(6) [DE 356] be denied for the reasons stated in this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Darrin P. Gayles. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 22nd day of January 2026.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge